Taliaeebbo, J.
The widow and heirs of William Harkins, deceased, bring a petitory action in this case to recover three several tracts of land containing, in the aggregate, about four hundred acres.
The suit was instituted in the first instance against Russel Jones, Sr., *429 who was alleged to be in possession, and who, it seems, died not long after the action was brought. It was renewed against his heirs, and Eussel Jones, Jr., who became administrator of his father’s estate, answered, denying any right to the property sued for in the plaintiffs, and averred that it was purchased by his ancestor from Andrew Lawson, by deed of conveyance, dated 29th of November, 1850. He alleges that since the purchase, valuable improvements have been made on the land, and that the sum of fifteen hundred dollars was paid to Lawson as the price of the land. He prays, in case of eviction, that he be allowed seven thousand dollars for the improvements, and that he recover from the succession of Lawson the amount payed for the land. The executor of Lawson was called in warranty, but we do not find that he answered. The plaintiffs had judgment in their favor, decreeing them to be the owners of the land, and awarding them rent for the use of the land at the rate of two hundred dollars per annum, from 1st January, 1852. The defendants had judgment over against the succession of Lawson for the amount claimed of the executor under the warranty. From this judgment the defendants have appealed.
We shall direct our attention in the first place to several bills of exceptions found in the record. Before answering to the merits the defendant excepted to the action, on the ground that it was instituted against a party not in possession, averring specially that Elkin Jones was possessor of the-land and premises, and moved a dismissal of the case. The testimony of several witnesses was introduced on the question of possession, but their statements are contradictory. Eussel Jones, Sr., and Elkin Jones, were both living together on the plantation, and the title obtained from Lawson was in Eussel Jones, Sr. We think the exception was properly disregarded by the Court.
The defendants filed what they term a peremptory exception, the substance of which is that there were not proper parties before the Court; that one of the heirs of Harkins had died since the commencement of the suit, and that no revival had taken place in the name of his representative, and that another heir, at that time a minor, had attained the age of majority. They further excepted to the suit that it should have been brought in the character of one for partition. It appears from this bill of exceptions, that it was presented after the close of the evidence, and when the argument of the cause was about to commence. The exception being of the dilatory kind, we think the Court properly overruled it, on the ground that it came too late.
A third bill of exceptions was taken by the defendants to the admission of evidence to prove that Lawson (whose executor was called in warranty) declared in relation to the lands in controversy, that if the heirs of Harkins were to sue for them they would recover, as the perfect title was in them. The objections are, that the declaration was made, if at all, out of the presence of the parties, and is a mere loose hearsay statement. That so far as the defendants are concerned, the representative of Lawson is not a party to the suit. The evidence was admitted by the Court only to show the bad faith of Lawson, under whom defendants ¿bold, and to prevent prescription. We think the ruling of the Court was proper. 2 N. S. 13. 12 E. 146.
*430 The plaintiffs reserved a bill of exceptions to that part of the charge given by the Court to the jury, which instructed them that unless the heirs of Harkins show, affirmatively, that the estate of their ancestor has been settled and the administration closed, they cannot recover.
It appears that William Harkins died in the year 1840. In the month of October of that year, an inventory was taken of his estate. It further appears that W. C. Veeder became the administrator, and that in the month- of April, 1845, he filed an account of his administration. This" account was opposed, and much litigation followed. The estate, by the showing of the administrator was insolvent, and paid nothing to the ordinary creditors. From the judgment rendered by the District Court of Claiborne, adjusting the claims of the parties, the administrator appealedj and this Court, in October, 1847, remanded the case to the lower Court for further proceedings.
We find nothing in the record showing that any other proceedings were taken afterwards in relation to the estate. It is in proof that in the year 1849, the Court-house of the parish of Claiborne, together with the clerk's and recorder’s offices were burned, and all the records destroyed. In consequence of this accident the parties in this suit are compelled to resort in a considerable degree, to secondary evidence in relation to facts which would, under other circumstances, have to be established by written proof.
There appears some confusion and irregularity took place in regard td the' affairs of the estate, and the management of it appears to have reflected no credit upon the administrator. The land in dispute, it appears sufficiently clear, was placed upon the inventory of the estate, but we do not find that it was ever sold by any order of Court invoked by the administrator or creditors of the succession. Evidence was introduced, in the course of the trial, to show how this property was disposed of. This we shall presently notice. In the consideration of this exception, we have to determine whether, under the circumstances presented, the widow and heirs of Harkins are precluded from asserting a right to the land in dispute, on the ground that they have not shown that the administration of the estate has been closed.
At the decease of their ancestor his heirs became seized of his property. The land, being community property, one-half of it belongs to the widow, and the other to the heirs. The title so vested continues in the parties, subject to be divested at any time by the creditors themselves, or by the administrator acting for them. When it is said that the rights of heirs are merely residuary, nothing more is meant than they take only what remains of a succession after its charges are paid. They are not the less owners of the property they inherit, because it is followed by and subject to the charges against it. What then is to prevent them from asserting their rights to property as against persons not creditors of the ancestor or of the succession ? If the creditors fail, or omit to claim property found in possession of third parties, and which belongs to the succession against which they have claims, shall the heirs of the succession be precluded from claiming it ? In the present case, we find that the last proceedings legally taken, in regard to the affairs of Harkins’ estate, was in the year 1847. Ten years afterwards, this suit is brought by *431 Ms widow and heirs. Another ten years have since passed, and we yet find no creditor claiming to have rights against this property. Shall third parties in possession avail themselves'of this long silence and iüáction of the creditors, if there remains any, to deprive the owners of their rights to it ? Shall they resist the claims of othe plaintiffs by asserting that the administration of the estate is not yet closed ? We do not see that there is an administrator to this estate; and, if there be one,- we do not find him intervening in this controversy on behalf of creditors; without determining that creditors, if-there be any, have but their rights against the property in question—whether in possession of-the heirs' or of third parties, we, nevertheless, conclude that under the state-of facts that appear to us to exist, the plaintiffs should be permitted to assert their claims as against the defendants, and in that view of the' case we think that the plaintiffs’ exception to the charge of the Court to the jury should have been sustained.
On the merits, we find that the plaintiffs set up title under" government patents issued to William Harkins. Against this title the adverse claimants set up one, that they endeavor to sustain by parol statements, which, in some respects, appear somewhat contradictory. The deputy sheriff, Alder, says in Ms testimony, that he acted in that capacity in the parish of Claiborne, about four years, commencing his duties in the spring of 1838; that he sold the land Harkins was then living on under a fieri facias, issued in a case entitled C. H. Veeder v. Wm. Harkins; that Veeder bought the land, and that a deed was made to him ; that the sale was, in the first instance, made on twelve months credit, and a twelve-months’ bond taken; that the bond was not paid at maturity, and that the land was sold under the bond, and that J. B. Bunnels bought it.
J. B. Bunnels says, in his testimony, that “the said administrator, (meaning Yeeder) did sell the lands belonging to the estate of said Harkins, at least I positively know that he sold the plantation he lived on. at the time of his death. C. H. Yeeder sold to me the plantation at private sale. He, the said Yeeder, sold me the tract of land for one thousand dollars cash down, and the balance on one and two years’ time, the whole amounting to three thousand dollars. C. H. Yeeder furnished me .the money to pay the thousand dollars, and I gave him my notes for. the balance of the purchase money. The first of these notes was transferred to Andrew Lawson. The second was handed to me by C. H. Yeeder, in Alexandria, La., which was not paid by me, but was destroyed by myself. These notes were made payable to C. H. Yeeder, as administrator of Wm. Harkins. Said lands were afterwards sold by Andrew Lawson to force his lien on the first note. He bought the lands, and afterwards sold them to Bussel Jones, Sr. It was most perfectly understood between C. H. Yeeder and myself, that I was to have the place on paying the first note of one thousand dollars, but, as I was not certain of my title, I did not pay, and the place was sold as above stated.”
The land purporting to have been sold under fieri fiadas, and purchased by Yeeder, is identified as the same land placed upon the inventory of Harkins’ estate. It is unexplained by the record before us, why Yeeder, if he supposed he had acquired a title to these lands in Harkins’ lifetime by virtue of the sheriff’s sale spoken of, should accept the inventory *432 upon which, they were set down, as property of his succession, and should sell them to Runnels, and take his notes payable to the estate. The private sale of the administrator to Runnels was a mere nullity, and it is clear that neither Runnels nor Lawson had any confidence in the title'thus obtained. To make out title under sheriff’s sale, it is necessary to show a judgment, execution and sheriff’s deed. In the case before us, it is not shown that there was a judgment from which subsequent legal proceedings sprung. The title by the sheriff’s sale is defective in this respect, and taking the acts of Veeder as a criterion, we cannot but conclude that he attached no validity to it himself. The title of the defendants derived from such a source cannot be successfully opposed to the clear, unambiguous title shown to have existed in the plaintiffs’ ancestor, and of which it is not shown the plaintiffs have ever been divested.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.